## UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
flmb.uscourts.gov

| | |
|---|---|
| In re:<br><br>EVOLUTION MICRO, LLC<br><br>Debtor. | Case No. 6:23-bk-04081-TPG<br>Chapter 11<br><br>*Subchapter V Election* |

### AMAZON.COM SERVICES, LLC'S RESPONSE TO OBJECTION TO ALLOWANCE OF CLAIM NO. 8 BY AMAZON.COM SERVICES, LLC

Amazon.com Services, LLC hereby files its response (the "Response") to the Debtor's *Objection to Allowance of Claim No. 8 Filed by Amazon.com Services, LLC* [Dkt. No. 84] (the "Claim Objection"), in which the Debtor objects to Claim No. 8 filed by Amazon.com Services, LLC, and in support thereof, submits as follows:

### INTRODUCTION

The Debtor has acknowledged in pleadings in this case that it operated an Amazon seller account and sold goods to third-party customers on Amazon.com. The Debtor further acknowledges in its schedules that Amazon stored all of its inventory at Amazon warehouses. On December 8, 2023, Amazon filed Claim No. 8 for unpaid charges, including storage fees, which the Debtor owes in connection with the Amazon Business Solutions Agreement.

Incredibly, the Debtor now feigns ignorance in its Claim Objection, suggesting that it never entered into a contract with Amazon even though it sold goods on Amazon.com and despite the fact that counsel for Amazon provided a link to the governing contract to

507439604.8

Debtor's counsel in early December.[1] The Debtor has failed to meet its burden to rebut Amazon's *prima facie* proof of claim and does not provide grounds for disallowance of Amazon's claim under the Bankruptcy Code. Regardless, Amazon submits additional evidence substantiating the validity of its claim, and in light of such evidence, Amazon respectfully requests that the Court overrule the Debtor's Claim Objection.

## BACKGROUND

1. The Debtor commenced this case on September 29, 2023. *See* Dkt. No. 1. Prior to the commencement of this Bankruptcy Case, the Debtor sold household products to third-party customers on the Amazon.com store (the "Amazon Store") according to the terms of the Business Solutions Agreement ("BSA"), together with applicable Service Terms, Program Policies, and other agreements governing the commercial relationship between Amazon and the Debtor. A copy of the BSA is attached as Exhibit 1 to the Declaration of Rebecca Hartley filed in Support of this Response (the "Hartley Declaration").

2. The BSA contains the terms and conditions that govern a seller's ability to sell products on the Amazon Store. Hartley Declaration, ¶ 3. Amazon does not permit a seller to sell products on the Amazon Store unless it registers with Amazon and agrees to the terms of the BSA via an online click-through acceptance process. *Id.* As indicated in the General Terms section of the BSA, by registering to sell on the Amazon Store, all sellers agree to be bound by the terms of the BSA, including service terms and program

---

[1] Debtor's counsel did not communicate further with counsel for Amazon and mailed the Claim Objection to Amazon's counsel without warning, and without so much as a courtesy email to Amazon's counsel after filing the Claim Objection.

507439604.8

policies that apply for each country for which the seller registers or elects to use a service. *Id.* Amazon has searched and located an electronic record evidencing that the Debtor agreed to the terms of the BSA on July 13, 2014, via the click-through method online. *Id.* at ¶ 4.

3. Proceeds from a seller's sales on the Amazon Store are held in the seller's Amazon seller account administered by Amazon. The BSA provides that Amazon will periodically remit to the Debtor, from its Amazon seller account, proceeds from its sales on the Amazon Store less certain fees, taxes, and other amounts owed to Amazon. In addition, Amazon is authorized to "holdback" additional funds in the Amazon seller account funds for future returns, credit card chargebacks and other deductions. *Id*. at ¶ 5. The BSA provides that the Debtor is responsible for reimbursing Amazon for refunds and returns and for claims Amazon receives or initiates under the "A-to-z Guarantee" or the "A-to-z Claims Process for Property Damages and Personal Injury," and that such reimbursements may be deducted from the Debtor's sale proceeds on the Amazon Store. *Id*.

4. Amazon has the contractual right under the BSA to immediately suspend or terminate the BSA and a particular seller's ability to operate on the Amazon Store if, for instance, (i) Amazon determines that a seller has materially breached the BSA; (ii) the seller account has been, or Amazon's controls identify that it may be used for deceptive or fraudulent, or illegal activity; (iii) the seller's use of Amazon's Services has harmed, or Amazon's controls identify that it might harm, other sellers, customers, or Amazon's legitimate interests. *See id.* at ¶ 6, BSA, § 3 "Term and Termination."

5.      In connection with the Debtor's seller account, the Debtor also agreed to participate in Amazon's "Fulfillment by Amazon" or "FBA" program. The FBA program allows sellers to outsource warehouse storage and order fulfillment to Amazon. *See Declaration of Nisma Nayyar in Support of Response* (the "Nayyar Declaration"), at ¶ 3. Amazon assists third-party sellers, including the Debtor, with the order fulfillment process, including order receipt, storage of inventory, and shipment and delivery to third-party customers who purchase the sellers' goods. *Id.*

6.      In exchange for the services provided by Amazon in connection with the FBA program, Amazon is authorized to collect certain fees and charges, including distribution fees, participation fees, and additional long-term storage fees to the extent that inventory sits in Amazon warehouses for an extended period of time. *Id*. Amazon deducts such fees and charges from the sellers' Amazon seller accounts. *Id.* The Fulfillment by Amazon Service Terms, which describe Amazon's ability to collect charges for FBA services, are described on page 10 of 17 of the BSA. *See* Hartley Declaration, Ex. 1.

7.      In the Debtor's schedules, it acknowledged that it uses Amazon warehouses to store its inventory. *See* Part 10 of Statement of Financial Affairs at Dkt. No. 39 (stating that "Amazon Warehouse stores all inventory for the Debtor").

8.      The Debtor's Amazon seller account was blocked by Amazon on April 13, 2023, well prior to the commencement of this Bankruptcy Case, because it was flagged for selling stolen goods. Neyyar Declaration, ¶ 4. Amazon suspended the Debtor's ability to sell on the Amazon Store according to the terms of the BSA and in order to protect its

507439604.8

interests and the interests of customers on the Amazon Store. *Id.* Amazon was authorized by Section 3 of the BSA to suspend the Debtor's seller account on a prepetition basis.

9. On November 3, 2023, at 12:00 p.m., the Debtor's principal, Fazleabbas Khaki, appeared for a verification process with Amazon to confirm his identity and the legitimacy of the Debtor's seller account. *Id.* at ¶ 5. During the interview, Mr. Khaki disclosed that the Debtor used "KZ International" as a supplier, and indicated that he did not know where that supplier sources its inventory. *Id.* KZ International has been identified by Amazon as a seller of stolen goods and is flagged in Amazon's system. Further Mr. Khaki admitted that he was the owner of a separate Amazon seller account, which was previously suspended for selling stolen goods. *Id.* In light of this information, Amazon declined to reinstate the Debtor's ability to sell goods on the Amazon Store.

10. As of December 5, 2023, the Debtor's Amazon Seller Account had a negative account balance of -$118,273.89 for fees, charges, and expenses owed under the terms of the BSA and in connection with the FBA program. The charges the Debtor incurred between April 28, 2023 and December 5, 2023, are described in Exhibit A to the Nayyar Declaration.

11. On December 5, 2023, counsel for Amazon affirmatively contacted Debtor's counsel regarding this Bankruptcy Case and the Debtor's proposed chapter 11 plan, and asked Debtor's counsel whether the Debtor intended to assume the BSA and continue selling products on the Amazon Store. *See Declaration of Brian T. Peterson in Support of Response* (the "Peterson Declaration"), ¶ 2. Debtor's counsel indicated that the Debtor would not be selling on the Amazon Store and would not be assuming the BSA.

*Id*. Mr. Luna asked for a copy of the BSA in a subsequent email on the same day. *Id*. Counsel for Amazon emailed him a link to the click-through agreement the following day. *Id*. Counsel for Amazon also asked Debtor's counsel the following: "To the extent that the Debtor has inventory being stored by Amazon, will it [be] recovering such inventory to sell via other means?" *Id.* at Ex. A. Debtor's counsel did not respond to the email. *Id*.

12. On December 8, 2023, Amazon filed its proof of claim for amounts owed in connection with the BSA. Debtor's counsel never once attempted to communicate with counsel for Amazon regarding the proof of claim. Instead, on or about January 31, 2024, counsel for Amazon received the Debtor's Claim Objection in the physical mail.

## ARGUMENT

The Claim Objection should be overruled. The Debtor has failed to offer any evidence supporting its objection. Moreover, the Debtor has failed to establish any grounds for disallowance pursuant to 11 U.S.C. § 502(b). To the extent that Amazon's proof of claim contained insufficient supporting documentation to be *prima facie* valid, Amazon has supplemented its proof of claim in connection with this Response and carried its burden of persuasion. Amazon has established in its supporting declarations that the Debtor agreed to the terms of the BSA and that it owes Amazon for unpaid FBA charges including amounts owed on account of Amazon's storage of the Debtor's inventory.

A proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see, e.g.*, *In re Lampe*, 665 F.3d 506, 514 (3d Cir. 2011). *See also Walston v. PYOD, LLC (In re Walston)*, 606 Fed. Appx. 543, 546 (11th Cir. 2015) ("When a proof of claim contains all the information required under Rule 3001,

it 'constitute[s] prima facie evidence of the validity and amount of the claim.'"). The challenger must rebut the presumption of validity with affirmative proof, and more than a mere general assertion is necessary to overturn the presumption. *See In re Lampe*, 665 F.3d at 514. *See also Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (BAP 2d Cir. 2000); 9 COLLIER ON BANKR. ¶ 3001.9[1] (15th 3d. 2003). In meeting its burden of production, the debtor must produce evidence rebutting the filed proof of claim of "probative force equal to the contents of the claim." 9 COLLIER ON BANKR. ¶ 3001.9[1]; *See also In re Walston*, 606 Fed. Appx. at 546 (noting burden shifts to objecting party to "come forward with enough substantiations to overcome the claimant's prima facie case." (citation omitted)); *In re Brown*, 221 B.R. 46, 47 (Bankr. S.D. Ga. 1998).

In order to refute such *prima facie* validity, the party opposing a claim must present evidence sufficient to "negate one or more of the sworn facts in the proof of claim." *See also In re Walston*, 606 Fed. Appx. at 546 n. 6. An objection alone is insufficient to contest a proof of claim; the objection must contain "probative evidence to call a claim into question." *In re King Resources Co.*, 20 B.R. 191, 197 (D. Colo. 1982); *see also In re Lanza*, 51 B.R. 125, 127 (Bankr. D.N.J. 1985) (finding that "the onus is on the debtor to overcome the presumption of validity"). Importantly, even if a creditor's proof of claim does not comport with Rule 3001, the claim is still allowed under Section 502 of the Bankruptcy Code unless the Debtor establishes an exception under Section 502(b). *See e.g.*, *In re Dove-Nation*, 318 B.R. 147 (8th Cir. BAP 2004) (stating that even if claims had not complied with Bankruptcy Rule 3001, they are still allowed claims under Section

507439604.8

502(a) unless the Debtor establishes an exception under Section 502(b)); *In re Bobe*, 635 B.R. 435, 442 (Bankr. D. N.J. 2021).

The Debtor has not overcome the *prima facie* validity of Amazon's proof of claim No. 8, which was signed by an Amazon representative and explained in the addendum thereto that the amounts were owed for charges under the BSA in connection with the Debtor's Amazon seller account. Although the BSA was not attached to the proof of claim itself, in subsequent correspondence Amazon provided a link to the BSA to Debtor's counsel. In fact, the Debtor has not offered ***any*** evidence in support of the Claim Objection. Nor has the Debtor established a basis pursuant to Section 502(b) to disallow Amazon's proof of claim. Instead, the Debtor leveled unsupported accusations against Amazon, even suggesting that it never entered into a contract with Amazon, and blaming the bankruptcy case on Amazon's refusal to grant the Debtor's appeal of its suspension. The Debtor's Claim Objection does not therefore provide a basis to disallow Amazon's claims and should be overruled.

Additionally, to the extent that Amazon's claim is not entitled to presumptive validity under Bankruptcy Rule 3001(f) because Amazon did not attach a copy of the BSA to the proof of claim, Amazon has provided additional evidence in connection with this Response to carry its burden of persuasion. *See Id.* The Hartley Declaration submitted in connection with this Response attaches a copy of the BSA and confirms that the Debtor agreed to its terms and became bound to pay for the contractual fees and charges owed in connection with its storage of the Debtor's inventory in Amazon's warehouses more particularly described in the Nayyar Declaration. Such fees are recoverable under the terms

8

of the BSA and the FBA program policies, and no sellers can operate a seller account on the Amazon Store without agreeing to such terms. The Debtor agreed to the terms of the BSA, and is obligated to pay Amazon for the services provided in connection with the seller account.

The Debtor's unrelated bare assertion that Amazon is responsible for the Debtor's bankruptcy case or otherwise acted improperly by suspending the Debtor's rights to sell on the Amazon Store is false and cannot form a basis to disallow Amazon's claim. As described in the Nayyar Declaration, the Debtor's rights to sell on the Amazon Store were suspended on account of the Debtor violating Amazon policies and the terms of the BSA *by selling inventory it obtained from a known seller of stolen goods*. The Debtor, for its part, left this fact entirely unmentioned in its Claim Objection, choosing instead to cast Amazon as the bad actor in an effort to avoid responsibility for the substantial fees and charges that it owes to Amazon.

Amazon continues to store the Debtor's inventory at its own expense, despite the fact that Amazon affirmatively reached out to Debtor's counsel to inquire regarding the Debtor's intentions with respect to the inventory. Rather than responding to Amazon's counsel and working cooperatively to obtain the inventory from Amazon, it ignored Amazon's communications and then objected to Amazon's claim for valid contractual FBA charges.

## **CONCLUSION**

For the foregoing reasons, Amazon respectfully requests that the Court overrule the Debtor's Objection to Claim and enter an order allowing Amazon's Claim No. 8 in full.

Dated: February 26, 2024                    Respectfully submitted,

*/s/ Carly S. Everhardt*
Carly S. Everhardt
Florida Bar No. 122053
K&L GATES LLP
200 South Biscayne Blvd., Suite 3900
Miami, Florida 33131
Telephone: (305) 539-3300
Fax: (305) 358-7095
Email: carly.everhardt@klgates.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 26, 2024, a true and correct copy of the foregoing was served through the CM/ECF system to all registered **CM/ECF recipients.**

*/s/ Carly S. Everhardt*